UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
BRADLEY E. GREEN,

                           Plaintiff,

         -against-                        **REPORT AND RECOMMENDATION**
                                                             17-CV-5422 (DRH)(ARL)

PAUL HINDS, TRICIA DANIELS, SEAN CADDELL,
PAM PHELAN, SHANE REESE, DENISE MOORE,
CAROL MUSOKOTOWANE and CAROL BROWN,

                           Defendants.
-------------------------------------------------------------------X
**LINDSAY, Magistrate Judge:**

      The plaintiff, Bradley E. Green ("Green"), brings this action against the defendants, seven employees of the United States Postal Service ("USPS") and one USPS union official, alleging that the defendants made false oral and written statements of fact regarding the plaintiff that resulted in disciplinary action being taken against him by the USPS. Before the Court, on referral from District Judge Hurley, is the motion of the seven USPS employees to dismiss the complaint pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(1) and 12(b)(6). For the reasons set forth below, the Court recommends that the motion to dismiss be granted.

## BACKGROUND

A.  **Factual Background**

      The following facts are taken from the complaint and are accepted as true for purposes of this motion.[1] Green is an individual who worked for the USPS for close to twenty-one years. Compl. ¶ 7. The moving defendants, Paul Hinds ("Hinds"), Tricia Daniel ("Daniel"), Sean Caddell ("Caddell"), Pam Phelan ("Phelan"), Shane Reese ("Reese"), Denise Moore ("Moore")

---

[1] Although the Court has set forth the entirety of the plaintiff's allegations for the purposes of this motion, as will be discussed, *supra,* most of the plaintiff's claims are alleged upon information and belief and the plaintiff has not provided any information concerning the basis of his belief.

and Carol Musokotowane ("Musokotowane") are all employees of the USPS assigned to the Brentwood branch (collectively, "the USPS defendants"). *Id*. ¶¶ 8-14. The defendant Carol Brown ("Brown") was the Financial Secretary of the National Association of Letter Carriers (the "union"). *Id*. ¶ 15. Although Brown was still a union officer at the time of the incidents alleged in the complaint, Brown had already retired from the USPS, so she is represented by separate counsel. Defs.' Mem. at 1.

On April 13, 1996, Green was hired by the USPS as a Part Time Flexible Mail Carrier at the Huntington, New York Post Office. *Id*. ¶ 20. Green worked his way up through the ranks and went his entire career without a single reported incident prior to the facts giving rise to the complaint. *Id*. ¶ 23. Indeed, in October 2015, Green was promoted to Supervisor of Customer Relations and was transferred from the Huntington Post Office to the Brentwood Post Office ("Brentwood") where, he says, his mission was to clean up the chronic delays, overtime and other inefficiencies that plagued that branch. *Id*. ¶¶ 2, 24-5.

According to the complaint, the defendants deeply resented Green's plan to clean up Brentwood, so they conspired to ruin him by maliciously attacking and defaming him. *Id*. ¶ 28. Green alleges, in this regard, that his nightmare began at the East Setauket Post Office ("East Setauket") where he was temporarily assigned before his permanent move to Brentwood. *Id*. ¶¶ 26, 30. Specifically, Green claims that after he arrived at East Setauket, he discovered that Brown had been referring to him in obscene terms, such as "pr*ck" and "a**hole." *Id*. ¶ 30. Green alleges that Brown had long harbored ill will and personal animus toward him motivated, in part, by a dispute in fall of 2016 concerning how letter carriers were collecting mail for their routes - a dispute that Green had resolved in a manner with which Brown strongly disagreed. *Id*.

2

¶¶ 31-2.  When Green confronted Brown about her use of obscenities to refer to him, Brown indicated that she was trying to "protect" and "inform" USPS employees about him.  *Id*. ¶ 33.

Despite having been confronted by Green, Brown continued referring to him in obscene terms to his new co-workers with whom she had close personal friendships.  *Id*. ¶¶ 34-5.  Brown, along with the other defendants, also disseminated rumors about him including that he had engaged in racist, sexist, or otherwise highly offensive and illegal behavior.  *Id*. ¶¶ 34, 36.  For example, the defendant Hinds told Moore that Green had made racist statements, such as "no blacks will be 204-Bs" and "that 'ni***r' won't act." *Id*. ¶ 37.  Hinds also told Moore that Green would not assign any "ni***rs or women as 204/Bs."  *Id*.  According to Green, Hinds and Moore then spread these false rumors to other USPS employees.  *Id*. ¶ 38.

Green also alleges that in January 2017, Hinds told Moore and Marvene Moyston ("Moyston"), a nonparty co-worker, that Green had called co-workers of color "porch monkeys." *Id*. ¶ 39.  In addition, Hinds told Moore that Green had threatened to "mow" co-workers down with his car.  *Id*. ¶ 40.  Hinds then told Moyston that Green called her "a ni***r and a bi**h." *Id*. ¶ 41.  Green believes that Hinds also claimed in a writing that he wanted "to run Brown over" and that "[he'd] like to beat the black off her and beat her yellow." *Id*. ¶ 42.  Thereafter, on February 4, 2017, Hinds stated in a written document that Green had referred to co-workers using racial slurs, insults and sexist terms, had indicated that he would "love to run that ni***r over." Id. ¶ 43.  The written document also stated that Green had "target[ed] the defendant Ramos and harasse[d] him on a daily basis" and that Green had threatened his co-workers with violence.  *Id*.  Green alleges that Hinds knew or should have known that the claims about him were unequivocally false.  *Id*. ¶ 44.

Green further asserts that the defendant Daniel made numerous false and defamatory

3

claims about him orally and in writing. *Id*. ¶ 45. To this end, Green asserts that Daniel spread rumors that Green had sexually harassed a co-worker and forced her to resign, made negative comments about a co-worker's sexual orientation and called another co-worker a "nasty disgusting bi**h." *Id*. ¶ 46. The defendant Caddell circulated similar rumors about Green. *Id*. ¶ 48. He told Brown that Green had been "mocking him [by] jumping around like an ape." *Id*. ¶ 49. For his part, the defendant Phelan claimed that Green had posted a Facebook comment disparaging Phelan's ability to perform her job and had created and/or fostered a "boys' club" atmosphere that marginalized female employees. *Id*. ¶ 52. The defendant Reese claimed that Green was sexually harassing a subordinate and had referred to Hinds as "that f*g." *Id*. ¶ 55.

With respect to the defendant Moore, Green claims that Moore circulated multiple false and defamatory claims about him including spreading a false rumor that he had sexually harassed a co-worker and forced that co-worker to resign from her employment. *Id*. ¶ 59. Green believes that Moore also told at least four co-workers that Green had made racist statements. *Id*. ¶ 61. Then, in January 2017, Moore told Brown that Green said he would not assign any "ni***rs or women as 204/Bs." *Id*. ¶¶ 62-3. Moore also told Reese and another co-worker that when Green was referring to another USPS employee, he stated that the "ni***r' won't act" as long as I am at Brentwood. *Id*. ¶ 64. Green believes that these rumors were repeated by many USPS employees. *Id*. ¶ 65.

According to Green, Moore knew or should have known that the statements about Green were unequivocally false. *Id*. ¶ 66. In fact, Green alleges that Moore later admitted that the rumors she spread about him were unfounded. *Id*. ¶ 67. Specifically, Moore admitted during an interview that she had never observed Green making any racist statements. *Id*. ¶ 68. Finally, Green asserts that the defendant Musokotowane circulated additional false and defamatory

4

claims about him. Green alleges, in this regard, that Musokotowane told at least one third party that Green had referred to mail carriers as "pieces of sh*t" and "idiots." *Id*. ¶ 70. The false claims made by Musokotowane were then shared with other employees of USPS. *Id*. ¶ 71.

Ultimately, in February 2017, Green was informed that formal complaints had been filed against him, alleging that he was racist and sexist and had created a hostile work environment. *Id*. ¶ 73. Thereafter, an investigation was conducted. *Id*. ¶ 75. However, Brown inserted herself into the investigation process, conducting "interviews" and soliciting "statements" even though Green says she had already retired from the USPS and, according to Green, was not assigned by the USPS to conduct any official investigation. *Id*. ¶ 76. Green further contends that the purported investigation was not conducted in an appropriate, confidential or good faith manner. *Id*. ¶ 77. Specifically, throughout the investigation, Brown ignored exculpatory evidence and repeated the false rumors that the defendants had spread about Green. *Id*. ¶ 78. In fact, the USPS and Brown only interviewed a select number of Green's co-workers, ignoring the vast majority of co-workers from the Brentwood and East Setauket Post Offices and a multitude of other individuals with whom Green had worked during his twenty-one-year tenure. *Id*. ¶ 79.

Green believes that Brown used the investigation as a pretext to further defame him. *Id*. ¶ 80. For example, during the investigation, many of the interviewees' oral statements were reduced to written form and made available to third parties who, Green says, had no legitimate business need to review such information. *Id*. ¶ 81. In sum, Green asserts that the investigation was a sham and Brown, who later admitted during an interview that she never observed Green speak in racist terms, should have known that the claims being asserted against Green were false. *Id*. ¶¶ 83-4. Indeed, several of the interviewees admitted to investigators that they had never observed Green engage in any racist, sexist or illegal behavior. *Id*. ¶ 85. Nevertheless, Brown

5

reported the claims to Green's supervisor, Jay Novellino.[2] *Id*. ¶ 86. As a result, on June 2, 2017, the USPS issued a "Notice of Proposed Removal," indicating that the USPS had decided to terminate him.[3] *Id*. ¶ 89.

The Notice of Proposed Removal contained language inviting Green to contact the Post Office Operations Manager, Frank Monteleone, to review the material upon which he relied in reaching his decision or to respond to the charges. Leonardo Decl., Ex. B. It also advised Green that he could request mediation in writing within 10 days of receipt of the Notice. *Id.* Green chose to have his attorney respond to the letter. Notwithstanding counsel's letter, the USPS determined that Green had "mistreated subordinate employees and used offensive and obscene language against Postal Service employees." *Id.* Ex. D. Accordingly, Green was terminated effective October 28, 2017, and was notified that he had a right to appeal the decision to either the USPS or the Merit Systems Protection Board ("MSPB"). Green opted to file an appeal with the MSPS, but the appeal was dismissed as untimely. *Id., Ex. C.*[4]

After Green was terminated, he was forced to file for bankruptcy protection. *Id.* ¶ 93. In addition, Green asserts that individuals who have known him for years have told him that they were so shocked by the behavior that they no longer can remain friends. *Id*. ¶ 95. In sum, Green

---

[2] Brown had previously told Novellino that Green had stolen a co-worker's property, a claim that Green unequivocally denies. *Id*. ¶ 88.

[3] Green alleges that the Notice of Proposed Removal contains various false and defamatory claims about him, which ultimately led to the loss of his career. Id. ¶ 90. Green also takes issue with the fact that the Notice was published to various third parties, including, several additional employees of the USPS. Id. ¶ 90. He argues that the defamatory statements contained in the Notice continue to be extraordinarily damaging to his reputation and career and have caused him to suffer severe mental and emotional distress. Id. ¶¶ 91-2.

[4] According to the record, Green "attempted" to file his appeal in October but was unsuccessful so he sent the papers to counsel. Leonardo Decl., Ex. C. Thereafter, his counsel worked on a draft appeal and sent it to Green on November 20, 2017. *Id.* Green elected not to take further action until after the Thanksgiving holiday, and subsequently had problems accessing the draft his lawyer had forwarded for review. *Id.* Green's counsel then advised the MSPS that she was busy until November 29, 2017, at which point tried unsuccessfully to file the appeal. *Id*. On December 1, 2017, Green's counsel contacted the MSPS for assistance, and was provided "a fax number." *Id*. Green's appeal was faxed in three days later, on December 4, 2017. *Id.* The deadline for the appeal was November 27, 2017.

contends that the defendants' false and malicious attacks have had a devasting effect on him both emotionally and financially. *Id*. ¶ 6.

### B. Procedural History

Green commenced this slander and libel action against the defendants in the District Court of the State of New York, County of Suffolk under Index No. 616141/2017 on August 17, 2017. ECF No. 1. Counsel for the plaintiff served the defendants with a summons with notice but did not attach a copy of the complaint. *Id.* On September 15, 2017, the USPS defendants filed a Notice of Removal along with a certification signed by the U.S. Attorneys' Office indicating that the defendants were acting within the scope of their employment at the time of the incidents from which the claim arose.[5] *Id.* As such, the defendants contend that the United States has been substituted as the party defendant in place of the USPS employees pursuant to 28 U.S.C. § 2679(d)(1). *Id.*

Upon receipt of the state court record, the undersigned scheduled an initial conference; however, the parties submitted a stipulation seeking to adjourn the conference to give the plaintiff additional time to serve the parties with the complaint. Accordingly, on December 26, 2017, the plaintiff filed the instant complaint and the defendants immediately requested a pre-motion conference to set a briefing schedule for a motion to dismiss, which was granted. As discussed below, the USPS defendants argue that the statements at issue were all given to the USPS as part of an internal investigation of Green's alleged inappropriate behavior. They further contend that the United States was automatically substituted as the party defendant and has not waived sovereign immunity for intentional torts. In addition, the defendants contend that the Court lacks subject matter jurisdiction because to the extent Green's claims concern the

---

[5] The certification appears to refer to all defendants. However, after the certification was filed, the United States learned that Brown had retired from the USPS. Defs.' Mem. at 9, n. 2.

termination of his employment, those claims are barred by the Civil Service Reform Act, 5 U.S.C. § 2302 et. seq. ("CSRA") and the Postal Reorganization Act, 39 U.S.C. § 1001 et. seq. ("PRA").  The USPS defendants also argue that, even if the court deems the certification of scope of employment to be improper, the individual defendants were, nonetheless, participating in an internal investigation, and thus, are entitled to absolute immunity.  Finally, the USPS defendants contend that the complaint fails to state a claim for intentional infliction of emotional distress.

## DISCUSSION

I.  **Standard of Review**

   A.   **12(b)(1)**

The USPS defendants have moved to dismiss the complaint pursuant to Rules 12(b)(1) and 12(b)(6). "'When a defendant moves to dismiss under Rule 12(b)(1) for lack of subject matter jurisdiction, and also moves to dismiss on other grounds, such as Rule 12(b)(6) for failure to state a claim upon which relief can be granted, the Court must consider the Rule 12(b)(1) motion first.'"  *Craig x. Saxon Mortg. Servs., Inc.*, No. 13-CV-4526, 2015 WL 171234, at *4 (E.D.N.Y. Jan. 13, 2015) (quoting *Bobrowsky v. Yonkers Courthouse*, 777 F. Supp. 2d 692, 703 (S.D.N.Y. 2011)); *see also* Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.").  "[F]ederal courts are courts of limited jurisdiction which thus requires a specific grant of jurisdiction." *Frontera Resources Azerbaijan Corp. v. State Oil Co. of Azerbaijan Republic*, 582 F.3d 393, 397 (2d Cir. 2009) (internal quotation marks and citations omitted); *see Gunn v. Minton*, 568 U.S. 251, 133 S. Ct. 1059, 1064, 185 L. Ed. 2d 72 (2013); *see also Allen v. Mattingly*, No. 10 CV 0667 (SJF)(ARL), 2011 U.S. Dist. LEXIS 34206, 2011 WL 1261103, at *5 (E.D.N.Y. Mar. 29, 2011)

("[f]ederal courts are courts of limited jurisdiction and may not preside over cases absent subject matter jurisdiction") (citations omitted). "A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000).

Under both Rule 12(b)(1) and Rule 12(b)(6) "the court must take all facts alleged in the complaint as true and draw all reasonable inferences in favor of plaintiff, but jurisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it." *Morrison v. Nat'l Austl. Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008) (citations and internal quotation marks omitted), *aff'd*, 561 U.S. 247 (2010). "When considering a motion to dismiss, courts are generally limited to examining the sufficiency of the pleadings, but where a party challenges the court's subject matter jurisdiction, the court may resolve disputed jurisdictional fact issues by reference to evidence outside the pleadings." *Baurv. Comm'r of Soc. Sec.*, No. 10-CV03781 (CBA), 2011 U.S. Dist. LEXIS 52128, 2011 WL 1877726, at *2 (E.D.N.Y. May 16, 2011) (internal quotation marks and citation omitted). Moreover, "[i]n contrast to the standard for a motion to dismiss for failure to state a claim under Rule 12(b)(6), a 'plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists.'" *MacPherson v. Town of Southampton*, 738 F. Supp. 2d 353, 361 (E.D.N.Y. 2010).

**B.     12(b)(6)**

The Supreme Court clarified the appropriate pleading standard in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), in which the court set forth a two-pronged approach to be utilized in analyzing a motion to dismiss. District courts are to first "identify [ ] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 679. Though "legal

9

conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* Second, if a complaint contains "well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id*. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a [d]efendant has acted unlawfully." *Id*. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556-57 (2007) (internal citations omitted)).

      For the purposes of a Rule 12(b) motion, "a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated by reference, and to matters of which judicial notice may be taken. *Serdarevic v. Centex Homes, LLC*, 760 F. Supp. 2d 322, 328 (S.D.N.Y. 2010) (quotation omitted); *see Chambers v. Time Warner, Inc.,* 282 F.3d 147, 152-53 (2d Cir. 2002). In addition, "in some cases, a document not expressly incorporated by reference in the complaint is nevertheless 'integral' to the complaint and, accordingly, a fair object of consideration on a motion to dismiss." *Goel v. Bunge, Ltd*., 820 F.3d 554, 559 (2d Cir. 2016). "A document is integral to the complaint 'where the complaint relies heavily upon its terms and effect.'" *Id*. (citation and internal quotation marks omitted). "Merely mentioning a document in the complaint will not satisfy this standard; indeed, even offering 'limited quotation[s]' from the document is not enough." *Id*. (quoting *Global Network*, 458 F.3d 150, 156 (2d Cir. 2006)). "'In most instances where this exception is recognized, the incorporated material is a contract or other legal document containing obligations upon which the plaintiff's complaint stands or falls, but which for some reason -- usually because the document, read in its entirety, would undermine the

10

legitimacy of the plaintiff's claim -- was not attached to the complaint*." Id.* (quoting *Global Network*, 458 F.3d at 157)). In addition, "'[a] court may take judicial notice of a document filed in another court not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings.'" *Global Network*, 458 F.3d at 157 (*quoting Int'l Star Class Yacht Racing Ass'n v. Tommy Hilfiger U.S.A., Inc*., 146 F.3d 66, 70 (2d Cir. 1998)).

**II.     Analysis**

      **A.     Certification Under 28 U.S.C. § 2679**

As a threshold matter, the USPS defendants correctly note that the United States has been substituted as the party defendant because, on removal, the government certified that the USPS defendants' actions fell within the scope of their employment. 28 U.S.C. § 2679(b)(1), commonly known as the "Westfall Act," provides:

> The remedy against the United States provided by [the FTCA] for injury or loss of property, or personal injury or death arising or resulting from the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment is exclusive of any other civil action or proceeding for money damages by reason of the same subject matter against the employee whose act or omission gave rise to the claim or against the estate of such employee. Any other civil action or proceeding for money damages arising out of or relating to the same subject matter against the employee or the employee's estate is precluded without regard to when the act or omission occurred.

*See Smith v. Brown*, 296 F. Supp. 3d 648, 654 (S.D.N.Y. 2017) (citing 28 U.S.C. § 2679 (b)(1)). 28 U.S.C. § 2679 (d)(2) further provides:

> Upon certification by the Attorney General that the defendant employee was acting within the scope of his office or employment at the time of the incident out of which the claim arose, any civil action or proceeding commenced upon such claim in a State court shall be removed without bond at any time before trial by the Attorney General to the district court of the United States for the district and division embracing the place in which the action or proceeding is pending. Such action or proceeding shall be deemed to be an

11

action or proceeding brought against the United States under the provisions of this title and all references thereto, and the United States shall be substituted as the party defendant. This certification of the Attorney General shall conclusively establish scope of office or employment for purposes of removal.

Of prime importance to this Court's determination is the last sentence of § 2679(d)(2), namely "Th[e] certification of the Attorney General shall *conclusively establish scope of office or employment for purposes of removal." See Osborn v. Haley*, 549 U.S. 225, 241, 127 S. Ct. 881, 894, 166 L. Ed. 2d 819 (2007) (emphasis in original). Indeed, "[f]or purposes of establishing a forum to adjudicate the case, . . . §2679(d)(2) renders the Attorney General's certification dispositive." *Osborn*, 549 U.S. at 242. Accordingly, if the certification remains in place, the United States will continue as the defendant and the USPS employees will obtain immunity from any personal liability. *Smith,* 296 F. Supp. 3d at 654.

However, "the Attorney General's certification is 'the first, but not the final word' on whether the federal officer is immune from suit and, correlatively, whether the United States is properly substituted as defendant." *Smith*, 296 F. Supp. 3d at 655 (quoting *Osborn*, 549 U.S. at 246, (quoting *Gutierrez de Martinez v. Lamagno*, 515 U.S. 417, 432, 115 S. Ct. 2227, 132 L. Ed. 2d 375 (1995)). "Section 2679(d)(2) does not preclude a district court from resubstituting the federal official as [a] defendant for purposes of trial if the court determines, postremoval, that the Attorney General's scope-of-employment certification was incorrect." *Id.*; *see also Bowles v. United States*, 685 Fed. Appx. 21, 23 (2d Cir. 2017) (unpublished) ("the district court may strike such certification to the extent it finds that the defendant employee was not in fact acting within the scope of her employment").

In his opposition papers, Green has challenged the government's scope of

12

employment determination. He argues, in this regard, that United States Attorney filed a certification without taking proper measures to ensure that all the defendants were in fact employees. Pl.'s Mem. at 5-6. Specifically, he notes that the defendant Brown was not an employee at the time of the occurrences. However, as previously stated, following the submission of the certification, the government learned that Brown had retired, and she is now being represented by separate counsel. The Court does not find the certification to be "highly suspect," as Green suggests, simply because the initial certification included Brown.

Moreover, Green contends that the idle chatter of his coworkers cannot be deemed to be within the scope of their employment. However, as Green acknowledges, he bears the burden of showing that certification was improper. *Smith*, 296 F. Supp. at 655 (citing *Lipkin v. SEC*, 468 F.Supp.2d 614, 623 (S.D.N.Y. 2006); *see also Regnante v. Sec. & Exch. Officials*, 134 F.Supp.3d 749, 768 (S.D.N.Y. 2015) (A plaintiff challenging the scope of employment determination must come forward with particular facts establishing that the defendant employees were not in fact acting within the scope of their employment). Here, Green has not met that burden.

"In reviewing a § 2679(d)(1) certification, a court applies state law principles concerning the scope of employment. *Id.* at 655. In this case, New York law provides that an employee's act is within the scope of employment if "the act was done while the servant was doing his master's work, no matter how irregularly, or with what disregard of instructions." *Id.* (citing *Riviello v. Waldron*, 47 N.Y.2d 297, 302, 418 N.Y.S.2d 300, 391 N.E.2d 1278 (1979)). Generally, courts apply the following five factor test to determine whether an employee's act fall within the scope of his or employment:

> [1] the connection between the time, place and occasion for the act; [2] the history of the relationship between employer and employee as spelled out in actual practice; [3] whether the act is one commonly done by such an employee; [4] the extent of departure from normal methods of performance; [5] and whether the specific act was one that the employer could reasonably have anticipated.

*Id.* at 656. While there is no single test to determine whether an employee is engaged in the employer's business at a particular moment, the overriding question is whether the employee was "acting not on his or her own behalf, but in the employer's service." *Id.*

It is clear Green believes that the USPS employees' actions were the result of personal animus, and therefore, not within the scope of their employment. However, this conclusory assertion was stated upon information and belief. While the Twombly plausibility standard does not prevent a plaintiff from pleading facts "upon information and belief" where the facts are peculiarly within the possession and control of the defendant or where the belief is based on factual information that makes the inference of culpability plausible, *see Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010), such allegations must be "accompanied by a statement of the facts upon which the belief is founded." *Navarra v. Marlborough Gallery, Inc.,* 820 F. Supp. 2d 477, 485 (S.D.N.Y. 2011). In this case, Green provides no such factual basis for his belief. Instead, Green repeatedly alleges in a conclusory fashion that the defamatory comments were intended to undermine his efforts to alter the conditions of the defendants' employment at Brentwood. In fact, Green now attempts to cast the USPS defendants' written complaints as mere personal insults by arguing that none of the defendants' job duties empowered them to circulate such opinions or comments. Pl.'s Mem. 10-11. But, it appears that the written statements were submitted to the USPS as part of an internal investigation of Green's inappropriate behavior on the job.

14

As to the particularized oral statements, which Green argues were made prior to the investigation, those statements nonetheless concerned Green's alleged job performance and conduct as a supervisor. Acts of defamation can be within an employee's scope of employment even if such acts are not among the employee's listed duties. *See Catania v. Herbst*, 916 F. Supp. 2d 266, 271 (E.D.N.Y. 2013) (employee may have the implied authority of an employer to report wrongdoing on the job directly involving the USPS). Although nothing in the complaint suggests that the USPS defendants were empowered to oversee Green's job performance, it is reasonable to assume that the defendants may have thought it was part of their duty to report misconduct such as racist or sexist remarks made by a supervisor during the course of employment.

Finally, although Green does describe with particularity the personal animosity that existed between him and Brown, nothing in the pleadings suggests a personal history between the plaintiff and the USPS defendants or explains the basis of his belief that the USPS defendants slandered him. Accordingly, Green has failed to satisfy his burden with respect to the scope of employment certification. *See e.g. Bagley v. Yale Univ.*, 42 F. Supp. 3d 332, 365 (D. Conn. 2014) (applying Connecticut law) ("The specifics of defamation pleading . . . are not furnished by that convenient circumlocution "upon information and belief").

### B.     Subject Matter Jurisdiction

The USPS defendants contend that since the United States was substituted as the defendant, the case must be dismissed for lack of subject matter jurisdiction. To this end, the United States argues that the waiver of sovereign immunity set forth in the

15

Federal Torts Claim Act ("FTCA") does not apply to defamation claims which are explicitly excluded under the statute. See 28 U.S.C. § 2680(h) ("The provisions of this chapter and section 1346(b) of this title shall not apply to . . . [a]ny claim arising out of . . . libel [or] slander"); *see also Siegert v. Gilley*, 500 U.S. 226, 233–234, 111 S. Ct. 1789, 114 L. Ed. 2d 277 (1991) (noting that a defamation suit against the United States is not allowed under the Federal Tort Claims Act "in the light of the exemption in [the FTCA] for claims based on defamation.").

Second, the United States argues that even if the defamation claim were permissible, Green failed to exhaust his administrative remedies prior to filing the instant lawsuit. *See* Hudson Decl., ¶ 4. The FTCA provides a limited waiver of sovereign immunity by the United States for certain torts but the waiver is conditional. *See Adams v. H.U.D.,* 807 F.2d 318, 321 (2d Cir. 1986) (requirements of 28 U.S.C. § 2675(a) must be strictly construed and are jurisdictional in nature and cannot be waived). Absent such compliance, the Court has no subject matter jurisdiction over the plaintiff's claim. Here, Green failed to file a claim with the appropriate agency within two years of the alleged injury. See 29 U.S.C. §§ 2401(a), 2675(a). Accordingly, for both reasons, the Court lacks the jurisdiction to entertain Green's defamation claim and thus, the undersigned recommends that the case be dismissed.

### C. Intentional Infliction of Emotional Distress

Finally, the government contends that Green has failed to meet the pleading requirements for an intentional infliction of emotional distress claim. The Court agrees. "To state a claim for intentional infliction of emotional distress, a party must allege '(1) extreme and outrageous conduct, (2) intent to cause severe emotional distress, (3) a causal connection between the

16

conduct and the injury, and (4) severe emotional distress.'" *Sesto v. Slaine*, 171 F. Supp. 3d 194, 201–02 (S.D.N.Y. 2016) (quoting *Bender v. City of New York*, 78 F.3d 787, 790 (2d Cir. 1996)). "When pleading intentional infliction of emotional distress, '[t]he bar is extremely high, and this highly disfavored cause of action is almost never successful.'" *Id. (quoting Guan N. v. NYC Dep't of Educ.*, No. 11–cv–4299, 2013 WL 67604, at *25 (S.D.N.Y. Jan. 7, 2013)). Indeed, to satisfy the pleading requirement, a plaintiff must allege conduct that is "'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society.'" *Id. (quoting Conboy v. AT&T Corp.*, 241 F.3d 242, 258 (2d Cir. 2001)).

Here, Green alleges that he suffered severe emotional distress due to the "[d]efendants' false and malicious attacks." Compl. ¶ 1. Although he states that "[t]he [d]efendants' conduct was shocking and outrageous and transcend[ed] the bounds of civilized society," see id. ¶ 107, the standard for asserting an intentional infliction of emotional distress claim has been "'set deliberately high to ensure that a plaintiff's claim of emotional distress is genuine and to dissuade litigation where only bad manners and hurt feelings are involved.'" *Restis v. Am. Coal. Against Nuclear Iran, Inc.,* 53 F. Supp. 3d 705, 729–30 (S.D.N.Y. 2014) (citing *Thai v. Cayre Grp.*, 726 F.Supp. 2d 323, 336–37 (S.D.N.Y.2010)). Generally, defamatory statements cannot constitute the extreme and outrageous behavior required for an intentional infliction of emotional distress claim. *Id.; see also Ostrowsky v. Dep't of Educ.*, No. 12–CV–2439 (RRM)(JO), 2013 WL 5963137, at *11 (E.D.N.Y. Nov. 7, 2013) (Defamatory statements—even when motivated by a desire to see an employee terminated - are generally not sufficiently extreme to support a claim of intentional infliction of emotional distress).

In addition, a claim for intentional infliction of emotional distress fails where it falls

17

within the ambit of another tort. *Restis,* 53 F. Supp. at 30 (citing *Fordham v. Islip Union Free Sch. Dist.*, 662 F. Supp.2d 261, 276 (E.D.N.Y.2009)). "Courts in this Circuit consistently dismiss intentional infliction of emotional distress claims where [a] plaintiff alleges no facts beyond those necessary to sustain another tort claim." *Id.* In this case, Green's intentional infliction of emotional distress claim falls within the ambit of his claim for defamation, and therefore, must also be dismissed.

## OBJECTIONS

Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule 72 of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report and Recommendation to file written objections. Any requests for an extension of time for filing objections must be directed to Judge Hurley prior to the expiration of the fourteen (14) day period for filing objections. Failure to file objections will result in a waiver of those objections for purposes of appeal. *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Beverly v. Walker*, 118 F.3d 900, 901 (2d Cir. 1997); *Savoie v. Merchants Bank*, 84 F.3d 52, 60 (2d Cir. 1996).

Dated:  Central Islip, New York
            December 10, 2018

_____/s_____
ARLENE R. LINDSAY
United States Magistrate Judge